# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# OXFORD DIVISION

| | |
|---|---|
| **WILLIAM HOLYFIELD** | **APPELLANT** |
| V. | NO. 3:13-CV-00227-DMB |
| **L.V. WHITEHEAD; and JOYCE WHITEHEAD** | **APPELLEES** |

## ORDER ON APPEAL

This is an appeal brought by Appellant-Debtor William Holyfield challenging numerous post-trial decisions made by the United States Bankruptcy Court for the Northern District of Mississippi. This Court has jurisdiction over Holyfield's appeal pursuant to 28 U.S.C. § 158(a).

## I
## Standard of Review

Where, as here, an appeal derives from a core proceeding[1] in a bankruptcy court, "the district court … applies a *de novo* standard of review to … conclusions of law and [a] clearly-erroneous standard to findings of fact." *In re BP RE, L.P.*, 735 F.3d 279, 282 (5th Cir. 2013) (citing 28 U.S.C. § 158(a)).

## II
## Relevant Factual and Procedural Background

While convoluted, the facts of this case are largely undisputed.

### A. Underlying Facts

On August 10, 1995, William B. Wallace executed a warranty deed conveying to Plaintiff Joyce Whitehead property located at 15082 Old Panola Road, Como, Mississippi 38619

---

[1] 28 U.S.C. § 157(b)(2) sets forth a non-exhaustive list of core proceedings. The presiding bankruptcy judge found that, insofar as Appellees L.V. Whitehead and Joyce Whitehead asserted claims against Holyfield, the debtor in the bankruptcy action, this matter was a "core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A), (B), and (O)." Doc. #10 at 1. This conclusion has not been challenged on appeal.

("Land"). Doc. #10 at 2. The conveyance was secured by an August 9, 1995, deed of trust executed by Joyce[2] in favor of Thomas Schuler, as trustee for Wallace. *Id.* The deed of trust on the Land was recorded on December 1, 1997. *Id.*

Earlier, on April 15, 1997, Joyce and her daughter Lisa Oliver purchased a 1997 Redman Brighton-LE mobile home ("Mobile Home") from Holloway Homes and placed it on the Land. Doc. #10 at 2, 12. Pursuant to the terms of the sales contract, Joyce and Oliver were obligated to pay Holloway $462.84 per month. *Id.* at 2.

On May 7, 1997, Joyce and Oliver executed a "Certificate of Mobile Home as Real Estate" designating the Mobile Home as part of the real estate for taxation purposes. Doc. #10 at 3. On June 24, 1997, the certificate was recorded in the Office of the Chancery Clerk of Panola County, Mississippi. *Id.* Shortly after, Holloway informed Joyce and Oliver that Oliver failed to qualify as a borrower due to her having previously filed for bankruptcy. *Id.*

On June 18, 1997, Joyce and L.V. executed an "Installment Note, Security Agreement, and Disclosure Statement" ("Mobile Home Security Agreement") in favor of Holloway regarding the $51,672 outstanding balance on the Mobile Home. Doc. #10 at 3. The Mobile Home Security Agreement provided for 360 monthly payments in the amount of $472.56. *Id.* The same day, Holloway assigned the Mobile Home Security Agreement to South Trust Mobile Services, Inc. ("South Trust"). *Id.* On July 1, 1997, a UCC-1 Financing Statement reflecting the sale and related financing of the Mobile Home was filed in the personal property lien records of the Panola County Chancery Clerk and with the Mississippi Secretary of State. *Id.*

On August 26, 2002, following years of tax delinquency, the parcel was sold at a tax sale to S&S Properties, LLC. Doc. #10 at 4. During the subsequent two-year redemption period, the Panola County Chancery Clerk provided notice of the sale to Joyce, via certified mail and service

---

[2] To avoid confusion, the opinion will refer to Joyce Whitehead and L.V. Whitehead by their first names.

by the Sheriff of Panola County; and to the public, via publication in *The Southern Reporter* on June 10, 2004. *Id*. at 4–5.

On December 23, 2004, Joyce filed a voluntary Chapter 13 action in the Bankruptcy Court for the Northern District of Mississippi. Doc. #10 at 6.

On February 28, 2005, Wachovia Bank, N.A., the successor to South Trust, granted Vanderbilt Mortgage and Finance, Inc., power of attorney to enforce and maintain the Mobile Home Security Agreement. Doc. #10 at 6.

On November 15, 2005, the Panola County Chancery Clerk executed a tax deed conveying the Land to S&S. Doc. #10 at 6. Approximately two months later, on January 22, 2006, S&S quitclaimed the Land to Holyfield for $2,000. *Id.* at 7.

On March 9, 2007, Joyce leased the Land and the Mobile Home from Holyfield for $550 per month. Doc. #10 at 7. On May 21, 2007, Holyfield filed an action against Joyce in the Justice Court of Panola County for eviction and the collection of $1,800 in unpaid rent. *Id.* at 7. The case settled. *Id*.

On November 13, 2007, Holyfield filed a second eviction/rent recovery action against Joyce in justice court. Doc. #10 at 7. Following a judgment in favor of Holyfield, Joyce appealed the justice court judgment to the Circuit Court of Panola County. *Id*.

On February 5, 2008, Joyce's Chapter 13 action was dismissed. Doc. #10 at 6. Pursuant to the confirmed bankruptcy plan, Joyce paid $12,205 to Vanderbilt on the outstanding debt of the Mobile Home. *Id*. Twenty days later, on February 25, 2008, Holyfield filed his own Chapter 13 action. *Id.* at 8.

On September 25, 2008, the Circuit Court conducted a de novo trial on Joyce's appeal of the justice court judgment. Doc. #10 at 8. On December 2, 2008, the Circuit Court issued a judgment of eviction against Joyce and set a hearing to determine damages. *Id.*

At an unspecified time in 2009, Vanderbilt brought suit against the Whiteheads to recover the unpaid balance of the Mobile Home Security Agreement. Doc. #14 at 101–02. The case subsequently settled. *Id.* Under the terms of the settlement, the debt secured by the Mobile Home Security Agreement was extinguished. *Id.*

On September 29, 2009, the Whiteheads filed this adversary proceeding. Doc. #10 at 8. The Whiteheads' complaint sought various reliefs against Holyfield and Wallace, including a determination of ownership of the Land and the Mobile Home and recovery of rent payments made to Holyfield.[3] Doc. #4. Holyfield counterclaimed for unpaid rent. Doc. #6.

On August 9, 2010, Vanderbilt assigned and quitclaimed its security interest in the Mobile Home to Joyce and L.V. Doc. #10 at 8–9. On July 18, 2011, the Circuit Court of Panola County stayed the Holyfield action pending the resolution of this proceeding. *Id.* at 9. At the time of the stay, the issue of damages remained pending before the state court. *Id.* at 8.

In early 2012, the Mobile Home was vandalized. Doc. #2. Through insurance he maintained on the Mobile Home, Holyfield received $5,411.25 in insurance proceeds. *Id.* The insurance funds were placed in an escrow account pending resolution of this matter.

**B. The Bankruptcy Court Proceedings**

From April 16–17, 2012, the bankruptcy court held trial on the competing claims of ownership and entitlement to rent. Docs. #14, #17. On May 3, 2012, the bankruptcy judge

---

[3] The complaint asserted claims against Panola County stemming from its alleged violation of Mississippi law in executing the tax sale. The bankruptcy court dismissed Panola County as a defendant. Doc. #10 at 16–17. This decision has not been appealed. The complaint also listed Locke D. Barkley (the Chapter 13 Trustee) as a defendant, seeking a court order directing Barkley to transfer ownership of the Mobile Home to the Whiteheads.

4

issued an opinion concluding that: (1) the August 26, 2002, tax sale was valid, and that title to the Land rested with Holyfield; (2) South Trust (the assignee of the Mobile Home Security Agreement) was not notified of the tax sale and that, therefore, "the tax sale is void as to South Trust and its successors in interest;" and (3) as the successor in interest to South Trust (through Vanderbilt and Wachovia), the Whiteheads owned a security interest in the Mobile Home. Doc. #10 at 16–18. The May 2012 opinion explicitly declined to address: (1) whether Vanderbilt was a necessary party to the litigation; (2) the amount of indebtedness secured by the Mobile Home; (3) entitlement to net proceeds of rent derived from rental of the Mobile Home;[4] and (4) the extent of Wallace's economic interest in the litigation. *Id.*

On June 4, 2012, the bankruptcy judge issued a supplemental order concluding that: (1) while the Whiteheads held a security interest in the Mobile Home, Holyfield held title to the structure; (2) the Whiteheads were entitled to the insurance proceeds and that "[i]f the insurance proceeds are insufficient to restore the mobile home to a reasonable condition, Holyfield would then be liable for any deficiency;" and (3) "no evidence has been presented that would merit a finding of misconduct on the part of Wallace or an assessment of damages against him." Doc. #13 at 3–4.

On September 20, 2012, the bankruptcy judge issued a third order, holding that: (1) the "costs and expenses necessary to restore the mobile home to a habitable condition is the sum of $5,911.25;" (2) the Whiteheads' claims against Holyfield should be offset by a $500 insurance deductible for the repairs on the Mobile Home; and (3) "other than the insurance policy proceeds

---

[4] Specifically, the bankruptcy judge wrote: "there will necessarily have to be an apportionment of the amount of rent that should be attributed to the mobile home compared to the amount of rent that should be attributed to the 'ground' lease." Doc. #10 at 17–18.

in the sum of $5,411.25, Holyfield owes the plaintiffs nothing, and the plaintiff, Joyce Whitehead, owes Holyfield nothing." Doc. #2 at 4–5.

The Whiteheads and Holyfield both appealed.[5]

### III
### Analysis

Holyfield advances four enumerations of error on appeal: (1) the tax sale was valid as against South Trust and its successors, including the Whiteheads; (2) even if the tax sale was invalid against South Trust, the security interest is unenforceable insofar as the underlying indebtedness was extinguished; (3) Holyfield proved entitlement to rental income; and (4) the Whiteheads were not entitled to the insurance proceeds flowing from the damage to the Mobile Home. Doc. #23.

#### A. The Validity of the Tax Sale

"In cases where [a] mobile home is assessed on the land rolls, the penalty for nonpayment or delinquency of taxes shall be the same as is prescribed by law in regard to real estate." Miss. Code Ann. § 27-53-17(1)(a) (West 2002). Mississippi law provides that lands burdened by unpaid taxes may be sold at a tax sale. Miss. Code Ann. § 27-41-15 (2002). Where land is sold at a tax sale, the law provides a two-year period, running from the day of sale, during which "any person interested in the land sold for taxes, may redeem the same, or any part of it …." Miss. Code Ann. § 27-45-3 (2002).

Commensurate with the redemption period, the clerk of the chancery court must issue statutory notice "within one hundred eighty (180) days and not less than sixty (60) days prior to the expiration of the time of redemption." Miss. Code Ann. § 27-43-1 (2002). In this regard, "[i]t shall be the duty of the clerk of the chancery court to examine the record of deeds,

---

[5] The Whiteheads failed to file an appellate brief and their appeal was dismissed for lack of prosecution. *See Whitehead v. Holyfield*, 3:13-cv-00190 (N.D. Miss. Aug. 19, 2014).

mortgages and deeds of trust in his office to ascertain the names and address of all mortgagees, beneficiaries and holders of vendors liens of all lands sold for taxes [and to] within the time fixed by law for notifying owners, send [notice] to all such lienors so shown of record." Miss. Code Ann. § 27-43-5 (2002).

At the conclusion of a tax sale redemption period, a purchaser may request a deed of conveyance from the relevant chancery clerk. Miss. Code Ann. § 27-45-23 (2002). "[S]uch conveyance shall vest in the purchaser a perfect title with the immediate right of possession to the land sold for taxes." *Id.* However, "[a] failure to give the required notice to such lienors shall render the tax title void as to such lienors." Miss. Code Ann. § 27-43-11 (2002). "In the event that a tax sale is rendered void for improper notice to one lienholder, but not others, the purchaser is faced with two options. The purchaser may opt to retain the property subject to the lien of the improperly-noticed lienholder. Alternatively, the purchaser may opt to file a claim for a refund, thereby relinquishing all rights to the property." *SKL Invs., Inc. v. Am. Gen. Fin.*, 22 So.3d 1247, 1250–51 (Miss. Ct. App. 2009).

In the proceeding below, the bankruptcy judge held that, pursuant to § 27-43-11, the tax sale was invalid as to South Trust because "it is undisputed that South Trust had no notice of the tax sale or of the expiration of the period of redemption." Doc. #10 at 15. Holyfield contends that insofar as the lien was not recorded in the records of deeds, mortgages, and deeds of trust, South Trust was not a "lienor" within the meaning of § 27-43-11 and that, therefore, the invalidity provision of the section is inapplicable. Doc. #23 at 17. Specifically, Holyfield submits that § 27-43-11 "makes the tax [sale] ineffective only to lienors to whom the Chancery Clerk was required to give notice and failed so to do [and that] South trust was not one of those entities …." *Id.*

7

Section 27-43-11 provides in full:

> For examining the records to ascertain the names and addresses of lienors, the chancery clerk shall be allowed a fee of Seven Dollars ($7.00) in each instance for each lien where a lien is found of record, and said fees shall be taxed against the owner of said land, if same is redeemed, and if not redeemed, then said fees are to be taxed as part of the cost against the purchaser. A failure to give the required notice to such lienors shall render the tax title void as to such lienors, and as to them only, and such purchaser shall be entitled to a refund of all such taxes paid the state, county or other taxing district after filing his claim therefor as provided by law.

Holyfield submits that § 27-43-11 must be read in conjunction with § 27-43-5. Section 27-43-5 states in relevant part:

> It shall be the duty of the clerk of the chancery court to examine the record of deeds, mortgages and deeds of trust in his office to ascertain the names and addresses of all mortgagees, beneficiaries and holders of vendors liens of all *lands sold for taxes*; and he shall, within the time fixed by law for notifying owners, send by certified mail with return receipt requested *to all such lienors so shown of record* the following notice ….

*Id.* (emphases added).

Under Holyfield's reading, the phrase "such lienors so shown of record" refers only to holders of liens which are "contained in the records of deeds, mortgages, and deeds of trust which the Clerk was required to examine." Doc. #23 at 17–18. Holyfield further submits that the invalidity provision of § 27-43-11 applies only to those lienors entitled to notice under § 27-43-5. *Id.* Holyfield continues that, because South Trust's UCC-1 financing statement was not located in one of the enumerated records, the chancery court was not required to provide notice and that, therefore, the bankruptcy court erred in applying the invalidity provision of § 27-43-11 .

Upon consideration, the Court concludes that § 27-43-11, which references but does not define, "required notice to … lienors" should be read in conjunction with § 27-43-5, which sets the parameters of the required notice. *See Ashcraft v. Bd. of Supervisors of Hinds Cnty.*, 36 So.2d 820, 822 (Miss. 1948) ("It is a familiar rule of statutory construction that, when several

8

different sections of a Code deal with the same subject-matter, these sections are to be so interpreted that they shall harmonize not only with each other, so that each shall stand with as full effect as possible consistently with the other related sections, but that they shall each be made to fit into the general and dominant policy of the particular system of which they are a part."). By its express terms, § 27-43-5 places a duty on the clerk of the chancery court to examine only a specific list of instruments in his office to ascertain the identities of only those "mortgagees, beneficiaries and holders of vendors liens *of lands sold for taxes*," and then to provide notice to those "such lienors so shown of record." The use of the word "such" immediately in front of "lienors" unmistakably refers to the "mortgagees, beneficiaries and holders of vendors liens" described earlier in the text of § 27-43-5. *See Oxford English Dictionary* Online, www.oed.com (last visited Sep. 3, 2014) (search for "such, adj. and pron.") (defining "such" as meaning "[o]f the character, degree, or extent described, referred to, or implied in what has been said").[6] Similarly, the inclusion of the word "so" before "shown," necessarily relates back to the section's direction to search a limited group of records. *Id.* (last visited Sep. 3, 2014) (search for "so, adv. and conj.") (defining "so" as meaning "[i]n the way or manner described, indicated, or suggested"). Put differently, the section directs the clerk to search a specific group of records, compile a list of relevant specified lienors from those records, and then provide notice to those lienors discovered in the way or manner described.[7]

Here, it is undisputed that the Mobile Home Security Agreement was not recorded in any of the record categories enumerated in § 27-43-5. Accordingly, notice to South Trust was not

---

[6] *See Summerall v. State*, 41 So.3d 729, 734 (Miss. 2010) (considering Oxford English Dictionary definition in aid of statutory interpretation).

[7] If the statute required notice to all lienors of record (rather than just those in the records listed), the inclusion of the word "so" would be superfluous. *Barton v. Blount*, 981 So.2d 299, 303 (Miss. Ct. App. 2007) ("'A construction which will render any part of a statute inoperative, superfluous, or meaningless is to be avoided'") (quoting *State ex. rel. Pair v. Burroughs*, 487 So.2d 220, 226 (Miss.1986)).

9

required, and the invalidity provision of § 27-43-11 is inapplicable to such lien.[8] The bankruptcy court erred in holding to the contrary.

### B. The Split of the Security Interest from the Underlying Debt

Next, Holyfield contends that even if the tax sale was void as to the security interest perfected by the Mobile Home Security Agreement, the lien was extinguished because the debt underlying the lien was satisfied by the settlement between the Whiteheads and Vanderbilt. Doc. #23 at 20.

Under Mississippi law, "[i]f no debt exists, then the lien perishes." *Frierson v. Mississippi Road Supply Co.*, 75 So.2d 70, 72 (1954); *see also Estate of Walters v. Freeman*, 904 So.2d 1140, 1143 (Miss. Ct. App. 2004) ("Once the debt was paid in full, the security agreement terminated."). Here, the debt underlying the Mobile Home Security Agreement vanished sometime in 2010.[9] Accordingly, even if the security interest was not extinguished by the 2005 conveyance of the tax deed to S&S,[10] it was extinguished no later than 2010. *Id.*

### C. Holyfield's Entitlement to Unpaid Rent

Below, the bankruptcy court considered competing claims arising from rental of the Land and the Mobile Home. Specifically, Holyfield sought rent due from Joyce for alleged unpaid rental payments during her occupancy of the Mobile Home and the Land. Doc. #2 at 3–4. Joyce, in turn, argued that the security interest perfected by the Mobile Home Security

---

[8] The Court is mindful that this holding has the potential to harm a faultless lien holder who properly records a security interest prior to a tax-debtor's designation of a mobile home as real property. However, this concern may be mitigated by the ability of lenders to contractually require notice from a debtor of any such designation, and by the general public interest in encouraging "purchases of land held by the [taxing authority] for nonpayment of taxes," *Stern v. Parker*, 25 So.2d 787, 791 (Miss. 1946).

[9] Vanderbilt assigned the Whiteheads its interest in the Mobile Home on August 9, 2010. The Court assumes that this was the approximate date of the settlement.

[10] *See Girard Sav. Bank v. Worthey*, 761 So.2d 230, 233–34 (Miss. Ct. App. 2000) (execution of tax deed following sufficient notice terminated security interest in property).

10

Agreement "entitled [her] to rents that Holyfield allegedly collected from tenants who occupied the mobile home from March, 2009, until it was destroyed early in calendar year 2012." *Id.* at 3.

In his September 2012 order, the bankruptcy judge noted that the Mobile Home Security Agreement "covers 'proceeds of the collateral including the proceeds of all insurance' [but] does not specifically mention rents or rental income." *Id.* at 4. Nevertheless, the court determined that, while Joyce owed Holyfield $8,400 in unpaid rent, "[b]ecause the proof is so inconclusive as to the claims of the plaintiffs … against Holyfield for his failure to turn over collected rents, the court is of the opinion that these competing claims regarding rents should equitably be considered a nullity." *Id.* at 4.

It appears the bankruptcy court held that the Whiteheads, as successors to South Trust/Vanderbilt, held the right to enforce the Mobile Home Security Agreement against Holyfield, and that such right carried with it a right to collect rents. Even if the instrument carried such a right, the holding is flawed insofar as, explained above, the relevant security interest was extinguished by conveyance of the tax deed in 2005. Accordingly, this Court concludes that the bankruptcy court erred in offsetting the rents owed to Holyfield against uncertain amounts derived from an extinguished security interest. Thus, remand on this issue is warranted to allow the bankruptcy court an opportunity to ascertain the proper amount of rent owed to Holyfield.

**D. Entitlement to Insurance Proceeds**

Finally, Holyfield challenges the bankruptcy court's June 2012 conclusion that Joyce and L.V. "are entitled to enforce their security interest in the mobile home, as well as, [sic] to any and all insurance proceeds that might be available to repair and restore the mobile home to a reasonable condition." Doc. #13 at 3. Although the June 2012 order omitted a justification for

its holding, the bankruptcy court later noted, in its September 2012 order, that the Mobile Home Security Agreement "covers … the proceeds of all insurance ….'" Doc. #2 at 4. Insofar as it appears that the bankruptcy court reached its insurance conclusion through its holding that the Whiteheads are entitled to enforce the Mobile Home Security Agreement, this Court concludes that the issue of who owns the rights to the insurance proceeds also must be re-evaluated on remand consistent with this opinion.

## IV
## Conclusion

For the reasons set forth above, the Court concludes that the bankruptcy court erred in holding that: (1) the tax sale is unenforceable as against the Mobile Home Security Agreement under § 27-43-11; (2) the security interest survived the 2010 elimination of the debt underlying the Mobile Home Security Agreement; (3) the assignment of the Mobile Home Security Agreement entitled the Whiteheads to rent collected by Holyfield; and (4) the assignment of the Mobile Home Security Agreement entitled the Whiteheads to the insurance proceeds collected by Holyfield following the damage to the Mobile Home. Thus, this matter is **REMANDED** for proceedings consistent with this opinion.

SO ORDERED, this the 5th day of September, 2014.

/s/ **Debra M. Brown**
**UNITED STATES DISTRICT JUDGE**